UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 5:18-CV-628-REW |
| | ) | |
| v. | ) | |
| | ) | OPINION AND ORDER |
| LEXINGTON FOOT AND ANKLE CENTER, PSC, et al., | ) ) ) | |
| Defendants. | ) | |

*** *** *** ***

Lexington Foot and Ankle Center and its owner/operator Dr. Michael Allen (together "LF&AC") move to dismiss this case, which the United States filed under the False Claims Act (FCA). DE #13. The matter is fully briefed and ripe for disposition. The United States pleaded its FCA claim with sufficient particularity, and the statutory framework erects no good cause hurdle the United States must clear before initiating suit. The Court thus rejects the dismissal effort.

**A. Factual and Procedural Background**

The United States alleges that Dr. Allen and LF&AC submitted claims to Medicare Part B and the Federal Employee Health Benefits Program (FEHPB) for non-reimbursable routine foot care, upcoded or misrepresented the provision of podiatry services in order to qualify them for reimbursement, and falsified patient records to substantiate fabricated claims. DE #1 at ¶¶ 2, 59–60. The allegations in the United States's Complaint overlap[1] with facts alleged in a March 2017

---

[1] The *qui tam* complaint includes multiple theories not within the narrower and more targeted instant pleading. *See Richardson, et al. v. Lexington Foot and Ankle Center, PSC, et al.*, No. 5:17-cv-129-DCR, DE #1 at, *e.g.*, 1–6 (alleging that LF&AC submitted claims for unnecessary and expensive tests/medical equipment and self-referred patients to the Allen-owned Lexington Diabetic Center); *id.* at 61–62 (pursuing FCA conspiracy claim).

*qui tam* action brought by two podiatrists that are former Lexington Foot & Ankle contractors. *See* DE #21 at 4; DE #13-1 at 2; DE #13-2 (*Qui Tam* Complaint). The relators similarly asserted the existence of a fraudulent coding and billing scheme. *See* DE #21 at 5; DE #13-1 at 3–5. The United States sought and received three extensions of time to intervene in the *qui tam* action, but, when the court stated that it would not approve further extensions, ultimately declined to intervene due to ongoing investigation of the claims. DE #21 at 5; *Richardson*, No. 5:17-cv-129-DCR, DE #13. The Government made clear that it would persist in investigating and might seek intervention later. *See Richardson*, No. 5:17-cv-129-DCR, DE #13 at 1 ("Because the Government has not completed its investigation, it cannot decide, as of the Court's deadline, whether to proceed with this action . . . However, the Government's investigation will continue[.]"). In April 2018, Defendants moved to dismiss the *qui tam* action, and, two weeks later, the United States moved to partially intervene in the case. *Id.*; DE #21-1 (Motion to Partially Intervene). Judge Reeves subsequently dismissed the *qui tam* complaint (without prejudice) for lack of requisite pleading particularity and denied as moot the Government's partial intervention motion. *Richardson*, No. 5:17-cv-129-DCR, DE #26.

Following the *qui tam* dismissal in June 2018, the United States claims it and Defendants engaged in (ultimately unsuccessful) informal potential settlement negotiations. DE #21 at 6. The United States then filed this action in November 2018. DE #1 (Complaint). Defendants moved to dismiss (DE #13) and sought to stay discovery on the claims pending resolution of the motion (DE #14). This Court denied the stay request. DE #24.

Defendants seek dismissal for two independent reasons. First, Defendants argue that this action is functionally an extension of the *qui tam*, and, thus, the United States must make the good cause showing statutorily required when the Government seeks to intervene in a *qui tam* after an initial declination. DE #13-1 at 12; *see* 31 U.S.C. § 3730(c)(3) (providing that, where a relator

2

proceeds with an action after the United States declines to intervene, "the court, without limiting the status and rights of the person initiating the action, may nevertheless permit the Government to intervene at a later date upon a showing of good cause"). Second, Defendants maintain that the Complaint's fraud allegations are insufficiently particular under Rule 9(b) and Rule 12(b)(6). DE #13-1 at 16.[2] The United States opposed dismissal (DE #21), and Defendants replied (DE #28).[3]

---

[2] The motion does not address and thus would not affect the Complaint's common law theories, unjust enrichment and payment by mistake. *See* DE #1 at 32–33 (Counts 4 & 5).

[3] Post-DE #13 briefing, Defendants submitted two additional exhibits intended to support dismissal. DE ##13-9 & 13-10. In the event the Court declined to consider these outright, LF&AC sought incorporation via surreply motion. DE #36. The first exhibit is a request for production that the United States served in this matter, which Defendants argue further demonstrates that the Government lacked information and, thus, good cause to bring this action. *See* DE #36-1. The second exhibit comprises third-party subpoenas (seeking medical records) that the United States also served in this case. *See* DE #36-2. Defendants argue that the subpoenas bolster their particularity argument and establish that the United States engaged in insufficient clinical investigation to support its pleading. *See* DE #36 at ¶¶ 4–5. LF&AC later clarified (in DE #38) that it views these subpoenas as equally demonstrating lack of good cause. As discussed in detail *infra*, the FCA's good cause requirement is limited to the *qui tam* intervention context. Given this threshold conclusion, documentation bearing on whether the United States could in fact demonstrate good cause is irrelevant to DE #13 disposition. And—as Defendants concede, *see* DE #38 at 3—Rule 9(b) and 12(b)(6) assessment hinges only on the subject pleading itself and documents central to the Complaint. *See Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (citing *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010)) (noting that courts must assess "the facial sufficiency of the complaint . . . without resort to matters outside the pleadings"). While the Court may consider "exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein[,]" *id.* (citations omitted), DE ##13-9 and 13-10 are not such documents. The Court may not "consider matters outside the pleadings in deciding a motion to dismiss" unless it "treat[s] the motion as one for summary judgment under Rule 56*." Patterson v. Novartis Pharm. Corp.*, 451 F. App'x 495, 498 (6th Cir. 2011) (citations omitted). Defendants do not request, and the Court declines to effect, Rule 12(d) conversion. Nor is a surreply appropriate here. Courts may permit a surrreply "when new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated." *Key v. Shelby Cnty.*, 551 F. App'x 262, 265 (6th Cir. 2014) (quoting *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003) (quotation marks omitted)). Defendants—here movants—have had a full opportunity to engage with the arguments the United States raised in response to DE #13; a surreply, properly cabined, is not intended to allow the movant to amend/bolster its motion with new evidence. The Court thus **DENIES** DE #36.

### B. Absence of a Good Cause Requirement

The parties agree (and the Complaint establishes) that this action stems from facts underlying the previous *qui tam*. Defendants urge the Court to take this connection further and construe the United States's Complaint in this case as an extension of (and functional attempt to intervene in) the dismissed *qui tam* after its previous declination decision in that action, triggering § 3730(c)(3)'s good cause requirement. Creative lawyering, but unsupported. There is no relevant authority (either that the parties cite or that the Court independently locates) indicating that an FCA case stemming from facts underlying a prior, dismissed *qui tam* is considered a continuation of that *qui tam* for purposes of § 3730(c)(3). Rather, the FCA framework suggests that there are two distinct types of actions authorized by the Act—§ 3730(a) actions brought by the Attorney General, such as here, and § 3730(b) *qui tam* actions brought by private individuals:

> Section 3730 authorizes two types of actions: First, the Attorney General, who "diligently shall investigate a violation under section 3729," may bring a civil action against the alleged false claimant. § 3730(a). Second, a private person, known as a relator, may bring a *qui tam* civil action "for the person and for the United States Government" against the alleged false claimant, "in the name of the Government." § 3730(b).

*Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507, 1510 (2019). The FCA's structure illustrates this dichotomy: § 3730(a) is titled "Responsibilities of the Attorney General," while § 3730(b) is titled "Actions by private persons."

Notably, the good cause requirement for late Government intervention in a *qui tam* is found within § 3730(c), explicitly titled "Rights of the parties *to qui tam actions*" (emphasis added). This section provides that "[i]f the Government proceeds with the action, it shall have the primary responsibility for prosecuting the action[.]" § 3730(c). However,

> [i]f the Government elects not to proceed with the action, the person who initiated the action shall have the right to conduct the action. If the Government so requests, it shall be served with copies of all pleadings filed in the action and shall be supplied

> with copies of all deposition transcripts (at the Government's expense). When a person proceeds with the action, the court, without limiting the status and rights of the person initiating the action, may nevertheless permit the Government to intervene at a later date upon a showing of good cause.

§ 3730(c)(3). The text of (c)(3) unambiguously qualifies when the Government must show good cause; by its terms, the requirement applies only when: (1) the Government elects not to intervene in a *qui tam* and conduct the action itself per (c)(1); (2) the relator nevertheless continues to pursue the *qui tam* action independently; and (3) despite its prior declination, the Government later seeks to intervene in the *qui tam*. LF&A invites the Court to treat a *qui tam*, once filed, as forever modifying how and whether the United States may pursue the involved false claims case. The statute offers no support for this expansive and preclusive take. Per Defendants, the dismissed (without prejudice) prior *qui tam* erects a permanent super hurdle. This is nowhere in the text. Indeed, § 3730(a), without restriction, states that "the Attorney General may bring a civil action under this section against" a person the Attorney General "finds . . . has violated" the FCA. Although the FCA modifies procedures for intervention in a pending *qui tam*, the FCA does not purport to impose those limits beyond the life of the *qui tam* action.

Other provisions of the statute—including the first-to-file rule—further underscore the distinction between § 3730(a) and § 3730(b) cases and the intentionally different requirements applicable to them. The rule provides that "[w]hen a person brings [a *qui tam* action], no person *other than the Government* may intervene or bring a related action based on the facts underlying the pending action." § 3730(b)(5). This rule "establishes a first-to-file bar, preventing successive plaintiffs from bringing related actions based on the same underlying facts." *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 971 (6th Cir. 2005) (quoting *U.S. ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1187 (9th Cir. 2001)). "The first-to-file bar furthers the policy of the False Claims Act in that '[t]he first-filed claim provides the government notice of the essential facts of

an alleged fraud, while the first-to-file bar stops repetitive claims.'" *Id.* (quoting *Lujan*, 243 F.3d at 1187 (citation omitted)). By barring successive *relators* from bringing actions based on the same underlying facts, but specifically exempting the Government from this first-to-file bar, subsection (b)(5) effectively furthers the policy outlined. The section's language expressly allows the Government to "bring a related action based on the facts underlying the pending action." § 3730(b)(5). This reinforces the Attorney General's power to sue independent of the *qui tam* case.

Even more pointedly, the FCA provides in § 3730(c)(5): "Notwithstanding subsection (b), the Government may elect to pursue its claim through any alternate remedy available to the Government[.]" Here, the United States initially declined intervention but expressly signaled that it may later seek to intervene. *Richardson*, No. 5:17-cv-129-DRC, DE #13 at 1. It tried to intervene before dismissal, noting that even if disallowed, the Government simply would file its own suit. *See id.*, DE #17-1 at 9 ("Ultimately, the *qui tam* asserts the government's rights, and if the government is not allowed to intervene to litigate those rights for itself, it would take the inefficient but necessary step of initiating a separate FCA action concerning the same misconduct at issue here.") (emphasis omitted). Section 3730 would have allowed that. *See United States v. L-3 Commc'ns EOTech, Inc.*, 921 F.3d 11, 27–28 (2d Cir. 2019)("[W]e think it clear from the FCA as a whole that the government may initiate its own suit under § 3730(a) even though there is a pending *qui tam* action. The government's suit—in contrast to an inchoate *qui tam* action—may properly be considered an 'alternate [available] remedy' within the meaning of § 3730(c)(5)"); *id.* at 28 ("For one thing, if the government preferred not to intervene in an existing *qui tam* action, it would seem perverse to exclude from the alternatives 'available to [it]' the judicial civil remedy that the government is explicitly authorized to pursue in § 3730(a).").

Plainly, if the Government could have filed separately despite the pending *qui tam*, nothing about a without-prejudice dismissal of the *qui tam* would affect the right to file. Indeed, other courts have recognized that a *qui tam* dismissal, not on the merits, has no impact on independent pursuit of a claim by the United States. *See, e.g.*, *U.S. ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 455 (5th Cir. 2005) (holding that *qui tam* dismissal for pleading insufficiency does not prejudice the Government's independent filing rights); *accord United States ex rel. Vaughn v. United Biologics*, L.L.C., 907 F.3d 187, 194 (5th Cir. 2018) ("[E]ven when the relator's case loses on a motion to dismiss, the Government should not be bound if the dismissal is for reasons not tied to the underlying legal merit."). *See also United States v. KForce Gov't Sols., Inc.*, No. 8:13-CV-1517-T-36TBM, 2014 WL 5823460, at *9 (M.D. Fla. Nov. 10, 2014) (relying on *Williams* and dismissing an inadequately pleaded FCA claim without prejudice as to the Government); *see U.S. ex rel. Rostholder v. Omnicare, Inc.*, No. 07-cv-1283, 2012 WL 3399789, at *15 (D. Md. Aug. 14, 2012), *aff'd*, 745 F.3d 694 (4th Cir. 2014) ("The government's decision not to intervene in this case does not suggest that the government necessarily believed that no FCA case was viable . . . Accordingly, it would be inappropriate to dismiss [based on pleading insufficiency] with prejudice as to the United States[.]").

As there is no requirement that the United States intervene in every potentially meritorious *qui tam*, "a decision not to intervene may 'not [necessarily be] an admission by the United States that it has suffered no injury in fact, but rather [the result of] a cost-benefit analysis.'" *Williams*, 417 F.3d at 455 (quoting *United States ex rel. Berge v. Bd. of Trs. of the Univ. of Ala.*, 104 F.3d 1453, 1458 (4th Cir. 1997)). The United States may decline intervention for any reason (including perceived deficiencies in the relator's pleading), and it would be inconsistent with the FCA's goals to hold the declination decision—or the deficient pleading's non-merits dismissal—against the

7

Government. *See id.* (noting that requiring the Government to "intervene in order to avoid forfeiting any future claims against the defendant" would risk giving relators "incentive to file FCA suits lacking in the required particularity, knowing full well that the government would be obligated to intervene and ultimately 'fill in the blanks' of the deficient complaint"); *see also State ex rel. Balderas v. Bristol-Myers Squibb Co.*, 2019-NMCA-016, ¶ 31, 436 P.3d 724, 733 (N.M. Ct. App. 2018) (quoting *Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*, 135 S. Ct. 1970, 1979 (2015)) ("In other words, '[w]hy would Congress want [a poorly plead but meritorious] earlier suit to bar a later potentially successful suit that might result in a large recovery for the [g]overnment?'") (alterations in original)). There is simply no basis for concluding that either a prior *qui tam* intervention declination, or that *qui tam*'s non-merits, without-prejudice dismissal, has any impact whatsoever on the Government's right to later pursue the underlying fraud claim via § 3730(a). None of these discussions signals an engrafted good cause hurdle.

LF&AC cited nary a case endorsing its analysis. Given the unambiguous text and structure of the FCA, and absent any contra authority bearing on its interpretation in this context, the Court must apply § 3730's plain meaning. The first step of statutory construction directs a "natural reading of the full text," which requires the Court to "examine the statute for its plain meaning, including the language and design of the statute as a whole." *United States v. Wright*, 774 F.3d 1085, 1088 (6th Cir. 2014) (citing *Elgharib v. Napolitano*, 600 F.3d 597, 601 (6th Cir.2010) (citations omitted)). Where the statute itself is clear—as here—the Court must stop and apply the text as it is written. The § 3730(c)(3) good cause requirement plainly applies only in the *qui tam* late intervention context, and there is no indication whatsoever in the statute that later Government-initiated FCA claims based on the same underlying facts should be treated as an extension of the *qui tam*. Rather, as discussed, § 3730 repeatedly emphasizes the difference between relator- and

8

Attorney General-initiated suits and, accordingly, expressly applies differing requirements to each. The Court declines to subvert the natural reading of § 3730 and impose a (c)(3)-type good cause requirement in § 3730(a) cases.

### C. Rule 12(b)(6) & Rule 9(b) Standards

Rule 12 provides for dismissal if a complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). The complaint generally must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). However, where the Complaint alleges fraud, it "must state with particularity the circumstances constituting fraud or mistake[,]" although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Although Rule 9(b) does not require a fraud complaint to satisfy the elevated pleading standard identified with respect to state-of-mind issues, the plaintiff must still meet the Rule 8 pleading burden with respect to such matters. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1954 (2009).

In deciding a Rule 12 motion, "the complaint is viewed in the light most favorable to plaintiffs, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of plaintiffs." *Nwanguma v. Trump*, 903 F.3d 604, 607 (6th Cir. 2018) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). However, the Court is not required to accept "a legal conclusion couched as a factual allegation[.]" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion, it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Id.* Collectively, the factual allegations must "raise a right to relief above the speculative level[,]" *id.*, and "state a claim that is plausible on its face, i.e., the court must be able to draw a 'reasonable inference that the defendant is liable

for the misconduct alleged.'" *Nwanguma*, 903 F.3d at 607 (quoting *Iqbal*, 129 S. Ct. at 1949 (citation omitted)). This "plausibility standard" does not require a showing that success on the claims is *probable*, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.

"Although not expressly required by the statutory language," the Sixth Circuit "ha[s] previously held that a complaint alleging violations of the False Claims Act must allege the circumstances surrounding the fraud with particularity as required by Rule 9(b)." *Walburn*, 431 F.3d at 972 (citing *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 641–43 (6th Cir. 2003)[4] and *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 562–63 (6th Cir. 2003)). To satisfy the Rule 9(b) particularity standard in the FCA context, "a plaintiff, at a minimum, must 'allege the time, place, and content of the alleged" instances of fraud, as well as "the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Bledsdoe I*, 342 F.3d at 641–43 (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993)). The central inquiry is whether the FCA complaint provides sufficient detail to "enable[] defendants to 'prepare an informed pleading responsive to the specific allegations of fraud.'" *U.S. ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 518 (6th Cir. 2009) (quoting *Bledsdoe I*, 342 F.3d at 643).

The Court has carefully read the briefing and has analyzed the Complaint.[5] The Court welcomes advocacy, but LF&AC's characterizations of the pleading, under the Rule 12/9 standards, badly miss. The Court sees not threadbare elemental recitals but instead a fact laden

---

[4] Referred to in case law and in this opinion, for clarification purposes, as "*Bledsdoe I*."
[5] For completeness, the Court also looked at Judge Reeves's prior analysis in dismissing the *qui tam* case. This pleading is much different and does not feature the flaws (lack of detail, lack of representative examples, absence of identified and falsely submitted claims) that doomed the relators' complaint.

10

complaint that precisely tracks the requirements of the FCA and the dictates of the governing pleading rules.

The Complaint particularizes the fraudulent schemes at issue (covering improper billing for both routine foot care services and E/M services). It identifies the temporal period, the actors, the specific patient populations, the specific services and billing types/codes involved, all against the backdrop of the well-alleged Medicare and FEHB systems. Further, and as allowed and regulated under *Bledsoe II*, the Government provided multiple representative examples. *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 509 (6th Cir. 2007) ("Specifically, we hold that the examples that a relator provides will support more generalized allegations of fraud only to the extent that the relator's examples are *representative samples* of the broader class of claims."). As to these examples, the Government provided identifying information, specific records, specific dates, billing details, and claim submission minutiae. The Complaint ties those precise claims to the fraudulent schemes and to the categories of other patients represented. The Complaint alleges the intent and conduct, by responsible actors to include Dr. Allen, allegedly violative of the FCA. All of these details, across the particular schemes and tethered to the sub-areas addressed in the Complaint, combine to plausibly state violations of the FCA.

The motion itself demonstrates the Complaint's sufficiency. LF&AC constructs a series of factual, merits-based arguments in its defense. Those theories have no place in a contest over pleading sufficiency—the Rule 12 rubric—but Defendants obviously understand the claims stated and can respond to them adequately. *See Bledsoe II*, 501 F.3d at 403 (citing *Bledsoe I* as to defendant's ability to prepare informed pleading in response).

Further, the Court notes that the battle over cloned records, indeed the full case, will be a competition between versions. Obviously, simply using a system to efficiently and accurately

11

capture common terms, conditions, or diagnoses is not inherently wrongful. Just as obviously, using a cut and paste system to falsely document treatments, visits, or conditions that did not actually happen would be quite problematic under the FCA. The Complaint is chock full of reasons, cited by the Government, to question the documentation practices: unchanging (but typically variable) patient details, chronological impossibilities, inconsistent providers, entries that do not match patient proof, entries that do not match podiatrist proof, entries at odds with observed or known conditions, and statistical anomalies. But, this is just the pleading stage; LF&AC may have a valid answer for each criticism. The merits will await the merits stage.

Drawing on its own "judicial experience and common sense," *Iqbal*, 129 S. Ct. at 1950, the Court easily finds sufficient non-conclusory "factual content that allows the court to draw the reasonable inference that" LF&AC is liable for the FCA violations alleged. *See id.* The plausible claims may properly go forward under the extant Complaint.

Defendants' attempted portrayal of the Complaint's allegations as conclusory does not square with the Complaint's actual content. The detailed factual allegations—accepted as true at this stage—raise "more than a sheer possibility that" Defendants engaged in fraudulent billing practices. *Iqbal*, 129 S. Ct. at 1949. And, critically for particularity purposes, they provide Defendants ample notice of the specific instances of fraud that the United States alleges to substantiate the purported scheme. *Poteet,* 552 F.3d at 518. The Complaint's allegations satisfy the Rules 8 and 9(b) pleading prerequisites and are sufficiently particular, under those Rules and Rule 12(b)(6), to survive LF&AC's dismissal attempt.

### D. Conclusion

Accordingly, for the reasons detailed in this opinion, the Court **DENIES** both DE #36 (Defendants' Motion for Leave to File a Surreply) and DE #13 (the Motion to Dismiss).

This the 6th day of June, 2019.

Signed By:
*Robert E. Wier* /s/ REW
United States District Judge